Mr. Neal or excuse me Mr. Davenport. Good morning Your Honor. May it please the court. Scott Davenport and my partner Melissa Ballard for the appellants. I would like to reserve two minutes of my argument from above. Just try and watch the clock. I will. Thank you. On November 21st 2021, exactly four years ago today, West Covina police officers were on patrol when they attempted to perform a routine traffic stop on a vehicle driven by appellee Ronnie Parham. Unbeknownst to the officers, Parham had suffered four felony convictions and been sentenced. What's the relevance of that? Did they know it at the time? It was unbeknownst to them. I think it's completely irrelevant. I think it goes to his mind. Wait, excuse me. Did they know it at the time? No they did not. All right. I guess what we're trying to do is we're trying to make sure that we have jurisdiction over this appeal. Absolutely. Because if we have jurisdiction, it's limited as to whether your officers are entitled to immunity as a matter of law, assuming all factual disputes are resolved and all reasonable inferences are drawn in the plainest favor. So we can't look at what facts your officers would allege, really, except as to what they allege that hasn't been contradicted by the plaintiff. We have to look every time at what the plaintiff alleges and then apply the standard that applies in qualified immunity cases. And so I think that's why Judge Berzon's question was pretty important because we're really looking at what did the plaintiff allege and how is the law such that even with the plaintiff's allegations you would win. Understood, Your Honor. Let's start it this way then. I'm gonna be fair. I looked at the DISH Cam and I don't think it helps at all. Understood. Let's go with what does help then. Let's talk about the non-force claims and that would be the search, the detention, the malicious prosecution claim. Because there's really three issues in this case. There are his excessive force claims, there's the non-force claims, and there's the deliberate indifference claims. Let's start with this middle one, the non-force claims. Hopefully I can get some wind of myself at that point. False arrest, you mean? Illegal search, inventory search, those ones. Well the false arrest stands or falls with what happened during the incident that you can't see on the video, right? No, not completely. It also has to do with the felony evading that happened before that. The felony evading? Yes, ma'am. What happened was the plaintiff, for his part, admitted that he saw lights behind him and didn't pull over. He admitted that he stopped and pulled away and he admitted that the officers activated their sirens and he still didn't pull over immediately. According to him, he didn't see anything until he turned into the last street and then he pulled over and then he decided he was going to go down the street to his grandfather's house and stop there, which is what he did. That's right. He pulled over and then he kept going even though he knew they were behind him. He admitted to those things. He certainly didn't speed up. He certainly wasn't trying to flee. That was pretty obvious. Your Honor, he admitted these facts. I don't know. I don't know and there is video of it with an admission and video. I'm not sure. You say, for example, in your brief that he sped away. Well, he didn't speed away. He went at the speed limit on a residential street, you know, and there was no indication that he was fleeing. I don't know what other indication there can be when you pull over from a police officer and then you pull away after one second. And we're looking at this from the perspective of the reasonable police officer on the scene. This is a man who, for whatever reason, did not stop and then eventually did and then after he stopped for a moment, he took off again. And then he eventually pulled over a second time. That's the back story of what happened. That's the basis, that's one of the basis for the arrest. That's separate and apart from the use of the force. And all of that happened before any force was ever used in this case. So those are undisputed facts. He doesn't dispute them. He admits them. So where are we? We have probable cause to arrest for the flight. So there can't be, by definition, malicious prosecution. There cannot be an illegal search. Why not? Because when you arrest someone in a vehicle, you can search the vehicle if they're still able to grab something from the vehicle, which I don't think he was at this point, or if you're looking for evidence of the crime of arrest. But you're not going to find in the trunk evidence of failure to yield. So what is the basis for a search, even if the arrest is valid? Inventory search under South Dakota v. Opperman? But an inventory search is permissible when you're going to impound the vehicle, right? Which they did. And as I read, section 22651 of the vehicle code, you can impound the vehicle if it's blocking traffic or somewhere dangerous. But this seems to have been a legal parking place on a residential street. So what's the basis for impoundment? Impoundment was because it was incident to arrest. But that's not the criteria for impoundment. If the officers would have left it there and something would have happened to it, then we'd be drawing a suit for failing to secure the vehicle. Am I looking at the wrong statute? Because the statute, the version of the vehicle code I mentioned, talks about when impoundment is appropriate and does not seem to cover the case where you're parked in an illegal space, you're not blocking traffic or anything. In front of your grandpa's house. Your Honor, as far as we were concerned, the issue that was always briefed below was that it was a search incident to an arrest and an impoundment following the arrest. But the district court seemed to disagree with you in that the district court said that it could go in either direction, whether he was evading arrest or whether he didn't, or whether he was resisting arrest or whether he didn't. Even the district court said there's two sides to this story. And given the side of the story that the plaintiff tells, I can't give you summary judgment. That's where I think there's the fundamental problem here is I don't know how you can take plaintiff's admissions and look at that video and say that there's no evidence of evading. And I'm talking about proof beyond a reasonable doubt. You're suggesting that we could look at that video and say that because he stopped once but he thought, I'll stop instead in front of my grandpa's place, that's evading? Absolutely. That's your argument? Yes, sir. And before that as well. When a cop pulls you over, you don't get to decide, like, I'm going to wait and pull over three miles. Just a minute. This isn't like he's going to drive across town. In Idaho, and I'm not sure because it's a totally different situation here, it would not seem unreasonable if you were down the road from your place to stop there instead of stopping where you first stopped. I'm trying to figure out how the jury would say that is absolutely, absolutely evading arrest. And if he had kept running, if he kept going, if he'd gone for and if he tried to do other things but just to pull down the street to his grandpa's place, I'm putting the facts in his stead, not in yours. I realize the officers may have a different story, but I'm just saying what he says. Well, there's only one story here, which is that he admits that he did not pull over and that he failed to yield. Is there any evidence in the record that an officer observing his behavior would have been aware that he was going to his grandfather's house? No. No, that was an unexpressed subjective intent. Is there any, and I don't know the answer to this, but is there a mens rea in failure to yield? Do you have to attempt to evade arrest? You know, as I sit here, I couldn't tell you whether that's a general intent or a specific intent. Well, if you do, obviously he didn't. I mean, he pulled over. Well, and I don't know if that's true, Your Honor, because what he did do was he did not pull over, he did not yield, he did not, he intended to not yield. For 47 seconds. I'm sorry? 47 seconds. 47 seconds. Between when he stopped the first time and when he got to his grandfather's house. Yes, yes. And there was the initial evading as well. Is this one of the things that went through, as to which there was a trial and he won? Oh, in the criminal context? Yes. Yeah, I believe so. I believe so. So doesn't that demonstrate that a jury can find otherwise because the jury did find otherwise? But we're not talking about proof beyond a reasonable doubt, we're talking about probable cause. Did they have probable cause to arrest, which is a much lower standard, you all know that. It triggers at a much lower rate and that's all that the officers needed to justify the stop. I would like to talk a little bit about the deliberate indifference before we come back to this. Because before we come back to the actual force where the meat is, I'm running out of time here. The undisputed facts show that he was transported to the hospital, the hospital documented that he refused treatment, and then he was taken back and booked. And the officers reasonably relied on that. So he said, and I'm looking at your 59, his deposition question, did you tell anyone at the hospital that you did not want any medical treatment? Answer, no. So maybe if we look at the records, we would say maybe he's lying. But isn't that a factual dispute? It's not because I think what we have here is we have a qualified immunity. There's no specific case law which says that the police officers could not rely on the medical reporting. And that's what they did. Do we know that they relied on the medical report? I'm sorry, Your Honor? Is there any evidence that they relied on the medical report as opposed to the fact that there later was a medical report? There's been no allegation that it was a lie in the medical report. I think the question is, is there any evidence that they had the report at the time? I mean, sometimes the report gets written up. They took him back after they documented that it was refused. After who documented? The medical staff. So the officers reasonably relied on the medical staff. But the officers were there the whole time, right? I'm sorry? Weren't there officers with him? I can't speak to that. Where is that on the record, that they said that they relied on the document? I was going to say, where is that on the record? I will get that for you in my intermediate one minute here when we go back. But that's where there is no prior case authority talking about what the officers can and cannot rely on in terms of medical reporting. There's no question, however, that a government official cannot deny, delay, or intentionally interfere with medical treatment. That's absolute, right? That's correct. And you agree with that? I agree with that. And so if that's what we're looking at, which comes out of Sandoval, you think the very fact that the officers may have seen that the hospital wrote down that he denied treatment is enough? Yes, sir. Okay. I want to understand your argument. And there's no case law to the contrary. I asked to reserve two minutes. I'm at two minutes right now. All right. So I'm going to find you your case. All right. Thank you very much. Mr. Neal. Good morning. Nishan Neal. May it please the Court, Nishan Neal on behalf of appellee Ronnie Parham. I believe the panel nailed the beginning part of this argument. This appeal centers on whether this court has jurisdiction. To hear a challenge related to appellants being denied qualified immunity after violently beating a compliant Ronnie Parham. The district court actually made it very clear, looking at the video and the record, that it's reasonable in both directions for the plaintiff at the time, or the district court, thinking it was Ronnie Parham or the officers. And that's very important when it comes to the question of a denial of a qualified immunity. I'm not sure that the district court's ruling is something that has to stand. They're doing the same thing we're doing, right? They're just saying put all of the inferences in Parham's favor. Assume all the factual disputes are resolved in Parham's favor. Are they entitled to qualified immunity? And the district court said, I looked at the video and I don't think they are. But you've got to respond to his argument. What about this idea of false arrest? He stops. And then he goes. What are you going to do with that? So the false arrest concern, it goes on to whether it's a probability. And I believe you may have asked earlier, the panel asked, was there probable cause? And the question is whether it is a mens rea requirement for intent to evade. And that's vehicle code 2800.1. And that's important because Ronnie Parham's testimony was he slowed down and he was nervous. He did not see the lights flash. And that's admitted was later on. And then he was nervous because of his friend, who also was beaten by the West Covina Police Department. So he wanted to make sure he was somewhere safe, which was only like a short drive, about 40 seconds to his home. And it's very important to say that. Yeah. I mean, so that I think you're right. I mean, if credited, that negates intent. And evidently the jury believed it. And I guess that's why he was found not guilty. But on the question of probable cause, it's undisputed that they turn on the lights. He pulls over, stops very briefly, and then resumes driving for another 45 seconds or so. Is that right? Yes, Your Honor. And so the officer observing that, they have no idea why he's driving away. You don't think that just that behavior is enough to create at least probable cause that it might be because he has the intent to flee? No, Your Honor, because the slow pause, he did not speed up. He was very safely down a residential street. And as you see it, as you watch the video, immediately he stops and rolls down the windows. We can't hear any audio. And his hands are up. I mean, by the time they arrested him, he had already stopped 45 seconds later down the street. So they would have had to have probable cause at that point to think that he was refusing to yield. And, in fact, there he was yielding at that point. So, I mean, in other words, isn't the whole story relevant to whether he failed to yield, not simply what happened at the point that he stopped and then kept going? Because they didn't arrest him then. They arrested him later after he did stop. Yes, Your Honor. The whole story matters, and the reason why it matters is because it's taking all of the circumstances into account. And it's important here is that I know that criminal standards are different, but a jury looked at this same evidence and said there was no crime that existed. And that's important to say if it's reasonable. I understand. But if you'd focus on probable cause, what is it the officers needed for the probable cause? At this point, for the probable cause to arrest him for failure to yield was that he had to have intent to flee or elude the police. And when did he get arrested for this? After he got out of the car and his hands up and stopped. So after he got to his grandpa's place. So that's why Judge Berzon's question is pretty important. One can suggest that one doesn't have probable cause anywhere along the way, but it's where they have probable cause to issue these warrants. Isn't that what we're looking at? When they arrested him. Yes. So when you're looking at the probable cause analysis, the statute is very important here, is that they had the lights switched over. Rodney Parham states when he made the right, that's when he did that, that's when he slowed down. And then a few seconds later, he stopped. And that's not probable cause to say he was trying to evade with the intent to flee, because the video shows he's moving very slow, not going fast. But also the video shows that he did stop before he was arrested, very shortly after the earlier thing. It was a brief pause, yes. All right. So what about the medical issue? Is there anything in the record that suggests that the, as opposed to the, he, his, Parham says that it was the police, it was the officers who told the hospital that he didn't want treatment. But is there anything to demonstrate that they relied on a hospital-generated note, that the officers relied on a hospital-generated note that Parham didn't want treatment? No, there's nothing in the record as it relates to the officers relying on that record. There was no testimony of the medical personnel that said this is what they wrote and they have this. It's very important to note that Rodney Parham says he was still in pain, the physical injuries were still there, and that he never received treatment. He was there for some long period of time and was never received treatment. And his facial injuries and his arm injury are very severe. So it's not something to say that it's his testimony that they interfered with him because he was not ready. He was sleeping or something. He was sleeping. He was sleeping. He was not refusing treatment. And so that's the point, is that the story could be believed either way, but on the qualified analysis, it looks at the account from the non-moving party, and here is Parham. Parham said he did not. The officers interfered with him, and it's up for the jury to make that decision on each case because the law is very clear at the time of that that if the officer was interfered with the medical treatment, that's a constitutional violation. And your colleague admitted to that. I guess the big deal was he was suggesting that because the hospital had said he refused treatment, it gave them enough reason to do what they had to do and that that's a different standard in that particular situation. I guess what you're arguing is that's just some evidence in his favor, that as far as you're concerned, Parham never denied treatment, period. And that is correct. Yes, that is my argument. And there's nothing in the record to say that there was a testimony that says he actually did so. It's both parties saying, no, I didn't. They're disputing it. So it's a he said, he said at this point. And in this case, when we're thinking about on appeal, the court saw it and it was said it's two ways, and that's important. And then I want to also touch on, just to make sure as it relates to the probable cause, it's very important. I believe that claims goes with the inventory search. Even I want to make sure that the court's aware that defendants did not bring that issue up to the district court. So the concern about whether this was an inventory search has been waived by that party. And that's very important that they have to be respectful of the information that they did so. And this is not. What was the position at that point? Was there a search and search to arrest? Was that there? That was the only thing that was there. And they did not say it was towards an inventory search as it relates to it. And even if the court was to do so, there was a disputed fact there. Because the statute has a limited exception to impound the car and do the search. And it's under the caretaking function. Yes, that's true that left there, there would be a penitential cause. But that's not the case in this fact. The fact shows his sister, Mr. Parham's sister, was outside and could have taken that car. So the concerns that the officers had about the community caretaking is not. But also if you look at the video, they were searching the car. They weren't caring for it. They looked all over the car for something or other. And that's not what you ordinarily do in an inventory search. They weren't just trying to figure out what was in the car to record it. They were looking for something. And also I want to make a note is that if the court was ever to consider the excessive force concern, that some of the gram analysis is also important. Appellants actually waived the argument about whether the severity of the crime was at issue. And that's important because as you go through the gram analysis and whether this thing is, if they waived it, they can't bring it up on appeal. So this court has to consider that the severity of the crime was low. So the concern of a felony evading is not something that could be considered, as well as the balancing test as it relates to the immediate threat the officers faced. It's very important there because looking at the facts, you saw him not resisting. And so the courts have been very clear that non-trivial force, such as kicking to the head and that's been as clear as day from the ninth circuit since 2001. So the officers knew that they weren't able to do that. And so that's important for the court's analysis if it was to see the excessive force. But if there's no further questions for the panel. Can I just have maybe one or two more questions on the false arrest question? So to overcome qualified immunity, you need to show not only that there wasn't probable cause, but that no reasonable officer on these facts could have thought that there was probable cause, right? That's correct. So is there a case law that you can point us to that would say that coming to a stop and then driving away for 45 seconds and then coming to a second stop, that that's just categorically that can't be probable cause of fleeing? I believe the law would look for it as McKenzie v. Lamb. It's one of the cases of the ninth circuit that talked about that in the district court sided. And it's important to say that when you look at it, it's actually the video going back and forth to both points. I think that lets us know at the time of the arrest there was no probable cause for that evading. Because here it was about a ticket. You're not arresting for a ticket in that same vein. And he showed a compliant officer, compliant assailant. His hands were out. He put his hand in the video, which we can clearly see that he was compliant. And that's important for that analysis. I have no other questions. All right. Thank you. Rebuttal? I'll keep it brief since I'm limited to two minutes. I want to ask a question. You spent a lot of time in your brief arguing about Scott and the notion that the video was somehow informative. I gather you're giving up on that. I'm sorry? Your brief was basically directed at the argument that under Scott there was proof in the video. But you seem to be giving up on that. I'm not giving up on the argument. I was concentrating on another matter. Okay. I don't want to hear it. I mean, we all looked at the video. I don't see either how you could get anything out of the video that answers the question. But if you think so, you might tell us why. Well, I think it does. But if you've watched the video, look, if you're having problems with the stop and the deliberate indifference, you're not going to find anything in the video that I can say right now that's going to change your mind today. Well, the only thing, then, that you're saying the video does is it showed that he does stop, and then he does proceed to the next place. When I look at that video, what I see is he is initially compliant after the second stop. And then he attempts to stand up in rear back after the handcuffs are imposed. And that's what causes him to be taken into custody. Maybe you had a microscope and could see that, but I couldn't see it. All right. Very well. I would like to mention, to follow up on something that Judge Miller indicated about the qualified immunity, and that the two things that we're looking at was, was the law clearly established with that sufficient degree of certainty, and was the officer's mistake, if any, was it reasonable? And that's under White v. Pauley and Davis v. Scher. You know, I don't believe there's any case law that would hold that an officer is not entitled to arrest for evading where someone stops, pulls over, and goes for 45 seconds if he subjectively wanted to go to his grandfather's house or had some other innocent explanation. Even when the arrest, the warrant, all of that happened after he was stopped at his grandpa's house and after he got out of the car, and now the officers are giving him an arrest warrant for things that happened? You're saying that is enough? Yes. Yes. And take his idea of what happened. I mean, that's the problem. I don't understand this notion of the evading was over once he stopped, because all evading is over once they're apprehended or they get away. So I don't understand the court's concern about that. Well, but he wasn't stopped because the police chased him or anything. He drove over there and he stopped. Voluntarily stopped. He voluntarily stopped. At his grandpa's place. That's his argument. I'm not saying it's true. I'm just saying I've taken his argument. He wasn't evading arrest. He just drove to his grandpa's house, got right out, did not attempt to resist arrest when he was being handcuffed. That's his argument. But you look at this through the point of view of the reasonable officer on scene who's forced to make those split-second calls. You don't look at this based on the other. By the way, any— Is there any evidence in this record that they knew who he was? I mean, they had any prior contact with this person? No, not that I'm aware of. Not that I'm aware of. I believe you were going to give us something about the hospital and where the evidence— I did, but we get hung up here. I think it is that same notion that there's no indication, there's no case law that says that they cannot rely on— No, but the question is where is there evidence in the record? I did say that, and I was caught up responding to this. So I would have to submit a letter. We can review the record. Understood. All right. Thank you, Your Honor. Thank you. Thank both sides for their arguments, and the case is submitted.
judges: BERZON, SMITH, MILLER